UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CATHERINE MACK,

      Plaintiff,

v.                           CASE No. 8:09-CV-697-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

O R D E R

The plaintiff in this case seeks judicial review of the denial of

her claims for Social Security disability benefits and supplemental security

income payments.* Because the decision of the Commissioner of Social

Security is supported by substantial evidence and does not contain any

reversible error, the decision will be affirmed.

I.

The plaintiff, who was forty years old at the time of the

administrative hearing and who has a ninth grade education, has worked as

_____

*The parties have consented in this case to the exercise of jurisdiction by a United
States Magistrate Judge (Doc. 15).

an office clerk, concession stand assistant manager, secretary, customer service associate, and dispatcher (Tr. 76, 744). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to chronic obstructive pulmonary disease, obesity, depression, severe sinus problems, dysplagia, sleep apnea, leg and foot swelling, anxiety, trouble sleeping, and trouble staying awake (Tr. 142-43). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "moderate obstructive sleep apnea, obesity, chronic obstructive pulmonary disease, cervical and lumbar sprain/strain, cervical and lumbar degenerative disc disease, depression, personality disorder, and status post left ankle arthroscopy" (Tr. 14). The law judge concluded that these impairments limited the plaintiff to sedentary work with the following restrictions (Tr. 15):

> [S]he requires a sit/stand option and is limited to occasional climbing of stairs and ladders, and occasional balancing, stooping, kneeling, crouching, and crawling. I further find that the claimant is restricted against climbing ladders, ropes, and scaffolds, and concentrated exposure to

> temperature extremes and pulmonary irritants. I
> also find that she is restricted to simple, repetitive,
> one or two step entry level tasks performed in a
> low stress environment, working mostly with
> objects rather than people.

The law judge determined that these limitations prevented the plaintiff from returning to past work (Tr. 18). However, based upon the testimony of a vocational expert, the law judge ruled that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as ticket checker and final assembler (Tr. 19). Accordingly, the law judge decided that the plaintiff was not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the

Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that she became disabled before her insured status expired on March 31, 2005, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

Although the plaintiff challenges the law judge's decision on two grounds, only one is viable. It does not warrant a reversal.

The plaintiff argues that the law judge determined that she was noncompliant with prescribed treatment and that this determination was in violation of regulation 20 C.F.R. 416.930 and Social Security Ruling 82-59 (Doc. 20, p. 7). This contention is baseless because the law judge did not make any such determination.

The plaintiff claims that she is disabled primarily due to breathing problems (Tr. 750-51). The law judge found severe impairments of, among other things, moderate obstructive sleep apnea, obesity, and chronic obstructive pulmonary disease (Tr. 14). However, the plaintiff has been a heavy smoker and morbidly obese for many years. She smoked one to four packs of cigarettes a day for over twenty years and, standing 5'4", weighed in 2004 as much as 263.5 pounds (Tr. 701). Several doctors have attributed her breathing problems to her smoking and obesity (Tr. 709, 710). The record contains a number of recommendations to quit smoking and lose weight, and the law judge commented on the plaintiff's failure to follow the

recommendations. Nevertheless, he noted that in 2008, prior to the hearing, the plaintiff's weight was down to 217 pounds (Tr. 16, 157).

The plaintiff construes the law judge's comments about the failure to stop smoking and lose weight as a determination that the law judge found in accordance with 20 C.F.R. 416.930 and Social Security Ruling 92-59 that the plaintiff should be denied benefits because, if she had followed the prescribed treatment, her ability to work would be restored (Doc. 20, pp. 6-12). See also 20 C.F.R. 404.1530(a). She argues that she really was not prescribed treatment to stop smoking and to lose weight and, further, that the law judge made no finding that, if she took those steps, she would have her ability to work restored.

This argument, as the Commissioner correctly responds, fundamentally misperceives the law judge's decision (Doc. 24, pp. 6-7). The law judge was not denying benefits because of a failure to follow a prescribed treatment that would restore an ability to work. Rather, he denied benefits because, even without the ameliorative steps of stopping smoking and losing weight, the plaintiff was not disabled. The law judge's comments about smoking and weight, as the Commissioner points out, were simply part of the

-7-

law judge's credibility determination. Thus, the law judge thought, reasonably enough, that, if the plaintiff's impairments were as disabling as she said, she would take such steps as stopping smoking or losing weight in order to improve her condition.

Having misperceived the basis for the law judge's decision, the plaintiff makes no challenge to the law judge's credibility determination. Significantly, the scheduling Order directed the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" and to support the challenges "by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 14, p. 2). The plaintiff has not complied with those requirements with respect to the law judge's credibility determination. Consequently, any challenge to that determination is deemed abandoned.

Although a challenge to the credibility determination is being rejected for lack of development, it is appropriate to add that there does not appear to be any merit to such a challenge. The law judge cited, and set forth, the proper standards for a credibility determination (Tr. 15). Moreover, the law judge did not broadly reject the plaintiff's subjective complaints. To the

contrary, he accepted them to the extent that he found that they restricted the plaintiff to a range of sedentary work (id.). Notably, no physician has opined that the plaintiff has greater functional limitations than those found by the law judge.

Furthermore, the law judge set forth adequate reasons for the credibility determination. The primary factor appears to be the plaintiff's activities of daily living. To the extent the plaintiff suggests that activities of daily living are inappropriate for consideration (Doc. 20, p. 14), that suggestion is incorrect. The law judge is clearly authorized to consider those activities in making his disability determination. See, e.g., Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984). Indeed, the regulations specify that activities of daily living will be taken into account in making a credibility determination. 20 C.F.R. 404.1529(c)(3)(i), 416.929(c)(3)(i).

In this case, the law judge explained that, with respect to the plaintiff's credibility, he was considering the following information (Tr. 16):

> Written statements provided by the claimant and her mother reveal that the claimant engages in more daily activities than she testified. Their statements reveal that the claimant independently

cares for her personal needs, helps prepare her daughter for school, microwaves food, performs light housekeeping and laundry tasks, drives, shops, watches television, reads, listens to music, visits by telephone, and occasionally visits with friends in her home (E section, pp. 23-27, 32-36).

On April 13, 2005, the claimant told her mental health therapist that she is able to perform activities of daily living and drive her daughter to school. She also said that she reads and watches television (F section, pg. 271, 274) On June 23, 2005, she told her therapist that she uses a computer (F section, pg. 285).

The claimant apparently felt well enough to visit a nightclub as recently as December 2007, when she tripped over a chair there and hurt her knee. Also, she obviously was sexually active. She became pregnant and delivered a baby in 2007.

The plaintiff attempts to color her activities as "minimal" and "of short duration" (Doc. 20, p. 14). That contention is meritless.

Moreover, other items in the record support the law judge's credibility determination (Tr. 16). The plaintiff reported to doctors that she injured herself in 2006 when she was coming down a water slide and again in 2007 when she was playing with her eleven year old daughter (Tr. 218, 230). Moreover, she traveled to Chicago in 2005 to meet her natural father (Tr. 332). In 2004, the plaintiff reported to a treating physician that she was

currently working as a secretary and a bartender (Tr. 183). The plaintiff stated that, after joining the Moose Lodge, she had volunteered at the Moose Lodge in 2005 one to two hours per day and was responsible for planning a meal for all the members as chairperson of their Health Awareness committee (Tr. 463, 466). The plaintiff mentioned additional activities such as spending time with friends, canoeing with her daughter, and having a boyfriend (Tr. 467, 760).

In addition to activities of daily living, the law judge also noted the plaintiff's failure to stop smoking and lose weight. It does not appear from the law judge's brief comments (Tr. 16) that he gave this latter factor much significance in his credibility determination. Thus, in his hypothetical question to the vocational expert, he limited the plaintiff to sedentary work with a sit/stand option and only occasional positional activities and no climbing (Tr. 761-62), thereby indicating that he was accepting the plaintiff's weight problem and was seeking to accommodate it. Moreover, at about the time of the hearing the plaintiff was down to 217 pounds from a high of 263.5 pounds in 2004.

With respect to the factor of smoking, the law judge could reasonably conclude that the plaintiff's continued smoking was inconsistent with the plaintiff's allegation of a debilitating breathing problem. Although the record covers a number of years, the only record of an attempt to stop smoking was in July 2004 (Tr. 185). While the plaintiff asserted that she had tried to quit many times, there is no other record of an attempt to do so. A treating physician has commented, to the contrary, that the plaintiff has "[n]o apparent desire or commitment to quit" (Tr. 702).

Moreover, her current pulmonologist has recommended a medication that the doctor "swears by" (Tr. 751). The plaintiff asserted that she cannot afford the medication (id.). However, as the law judge pointed out, the plaintiff's smoking habit costs more than the medication, since her use of two packs per day would cost about $180 per month, while the medication costs about $125 per month (id). Since the evidence shows that the plaintiff has not made substantial efforts to stop smoking, the law judge could reasonably conclude that the plaintiff's breathing problems were not as bad as she said.

In all events, it does not appear that the plaintiff's continued smoking was an important factor in the law judge's credibility determination. As indicated, that determination was based primarily on the plaintiff's activities of daily living. In addition, the law judge pointed to objective medical evidence showing that the plaintiff's breathing problem was not disabling. Thus, he stated (Tr. 16):

> The claimant's chronic obstructive pulmonary disease is controllable with inhalers. Examination performed on December 13, 2007, revealed that her lungs were clear to auscultation (F section, 562). The claimant had no wheezes, rales, rhonchi or crackles on her most recent examination performed on January 17, 2008 (F section, pg. 564).

In sum, the plaintiff misconstrues the law judge's discussion of the plaintiff's smoking and weight as a determination that the plaintiff was being denied benefits because she failed to follow prescribed treatment. The law judge, however, was simply commenting on those matters as a part of his credibility determination. Because the plaintiff has not challenged that determination, her claims fail. Moreover, even if the plaintiff had challenged the law judge's credibility determination regarding smoking and weight loss, the challenge would be unsuccessful for the various reasons set forth.

In her memorandum, the plaintiff asserts, as a second issue, the contention that the law judge erred in discounting the assessment of Dr. Charles Clay, a treating physician (Doc. 20, p. 12). However, as the Commissioner notes, the opinion from Dr. Clay concerned someone other than the plaintiff, and, accordingly, the pages of the administrative transcript from Dr. Clay were withdrawn by agreement of the parties (Doc. 24, p. 12 n. 10). Therefore, this additional contention is moot.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 22 day of March, 2010.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE